**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| In re: | |
| | |
| **ADINA NAOMI SEXTON** | **Chapter 7** |
| | |
| | **Case No. 13-70230** |
| Debtor. | |
| | |
| **ADINA NAOMI SEXTON** | |
| | |
| Plaintiff | |
| v. | |
| | **Adversary Case No. 13-07037** |
| **DEPARTMENT OF TREASURY,** | |
| **INTERNAL REVENUE SERVICE** | |
| | |
| Defendant. | |

**MEMORANDUM OPINION**

The question this court must answer is whether the government's post-petition setoff of the debtor's tax refund to satisfy a non-tax debt is a violation of the automatic stay. Before the Court are the debtor's complaint and the government's two motions to dismiss the debtor's complaint. The debtor's complaint seeks to enforce the automatic stay against the government. The government seeks to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. Additionally, the government moves to dismiss under Rule 12(b)(1) for this Court's alleged lack of subject matter jurisdiction. The government also moves the Court for entry of a *nunc pro tunc* order retroactively annulling the automatic stay and validating its setoff action. For the reasons set forth below, the Court denies the government's motions to dismiss and its *nunc pro tunc* motion and finds that the government's actions of intercepting and withholding the debtor's tax overpayment violated the automatic stay.

## JURISDICTIONAL STATEMENT

This Court has subject matter jurisdiction over the matters presented in this case pursuant to 28 U.S.C. § 1334.[1]  The plaintiff in this action is the debtor in this bankruptcy case.  In this matter, the Court must determine whether the debtor's interest in her tax overpayment is property of her bankruptcy estate, subject to injunctive protections under bankruptcy law.  Under 28 U.S.C. § 157(b)(2)(B), an action to determine the property of the debtor's bankruptcy estate is a core proceeding.  These sections of Title 28 grant the Court statutory jurisdiction to determine property of a debtor's bankruptcy estate and to enforce the protections the Bankruptcy Code affords such property interests.  Additionally, this Court has Constitutional authority to hear and to decide these matters as they stem from the bankruptcy itself; the debtor-plaintiff's action could not exist independent of the bankruptcy case.[2]

## BACKGROUND

The underlying facts of this case are not in dispute.  Adina Naomi Sexton filed her voluntary petition for Chapter 7 liquidation on February 13, 2013.  Chapter 7 Voluntary Petition, *In re Sexton*, 13-70230 (Bankr. W.D. Va. Feb. 13, 2013) ECF Doc. No. 1.  In her petition, Ms.

---

[1]   In its motion to dismiss, the government framed its Rule 12(b)(1) motion as an objection to subject matter jurisdiction; however, it admitted the Court has jurisdiction in its answer.  Answer at 1, *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-07037 (Bankr. W.D. Va. Sept. 23, 2013) ECF Doc. No. 12 [hereinafter *Answer*].  Furthermore, the government never made any argument relating specifically to the statutory grant of jurisdiction of the Court to hear this case.  *Id.*  Instead, the crux of the argument was that the debtor lacked standing to bring her case, which the Court will consider below.

[2]   In *Stern v. Marshall*, the Supreme Court found that a bankruptcy court may have statutory authority to hear a "core proceeding" under 28 U.S.C. § 157 yet not Constitutional authority to issue a final judgment in that proceeding. 131 S. Ct. 2594, 2608 (2011).  In *Stern*, the Supreme Court determined that a bankruptcy court could not issue a final ruling on a state law counterclaim against a non-creditor third party even if the counterclaim was a core proceeding.  *Id.* at 2615.  The test for whether a bankruptcy court has Constitutional authority to enter a final judgment is "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  *Id.* at 2618.  In this case, the debtor plaintiff seeks recovery of her tax overpayment, because according to the debtor, when the government seized the tax overpayment and applied it to outstanding indebtedness, it had not obtained relief from the automatic stay.  To determine if the automatic stay imposed under bankruptcy law applied to this action, the Court will need to determine if the property at issue was property of the bankruptcy estate.

Sexton listed her anticipated 2012 federal tax refund as an asset of her estate,[3] which she

estimated to be $4,200 and then exempted under Virginia Code sections 34-4 and 34-13.  *Id.* at

13.  After claiming the exemption in the refund, Ms. Sexton perfected it by filing a homestead

deed with the Clerk of the Circuit Court of Floyd County.  Complaint at 2, *Sexton v. Dep't of*

*Treasury, IRS (In re Sexton)*, 13-07037 (Bankr. W.D. Va. Feb. 13, 2013) ECF Doc. No. 1

[hereinafter *Complaint*].  On Schedule F, one of the liabilities Ms. Sexton disclosed was a debt

she owed to the United States Department of Agriculture Rural Development Service ("DOA").

*Id.*  This debt, scheduled as $114,617.42, was the result of a foreclosure sale that was insufficient

to satisfy the full amount of a mortgage guaranteed by the DOA.  *Id.*; *Answer* at 2.  As a

deficiency, this debt was wholly unsecured.  On March 18, 2013, the Chapter 7 trustee made his

Report of No Distribution, asserting that no assets remained in the estate to distribute to

creditors.  On May 14, 2013, the Court entered an Order of Discharge for the debtor and closed

her case, discharging the entire liability owed to the DOA.  Order Discharging Chapter 7 Debtor,

*In re Sexton*, 13-70230 (Bankr. W.D. Va. May 14, 2013) ECF Doc. No. 8; Bankruptcy Case

Closed, *In re Sexton*, 13-70230 (Bankr. W.D. Va. May 14, 2013) ECF Doc. No. 9.

It was during this time, however, that the issues leading to the present dispute arose.  On

March 6, 2013, approximately three weeks after Ms. Sexton filed her petition, the Department of

the Treasury ("the Treasury" and, collectively, with the DOA, "the government") sent a letter to

Ms. Sexton, notifying her that it was withholding her 2012 tax refund in order to apply it to the

"Non-Tax Federal Debt" she owed to the DOA.[4]  *Complaint* at 2.  The Treasury subsequently

---

[3]      As further discussed below, there is a legal difference between a tax "refund" and a tax "overpayment;"
however, at this point, the Court will use the terms as the parties used them in the pleadings.  In her complaint, Ms.
Sexton disputes the withholding of her "tax refund."  For further discussion, see *infra* note 14.

[4]      In a sworn statement filed with the court, Ms. Janice M. Dietz, assistant to the Director of Business
Operations for the DOA's Centralized Servicing Center, testified that the DOA officially received the offset funds

explained that it withheld the refund under the Treasury Offset Program ("TOP"), pursuant to 26

U.S.C. § 6402(d), also known as the "federal intercept statute." *Answer* at 2. Five days after

receiving the letter from the Treasury, Ms. Sexton's attorney advised the department of Ms.

Sexton's pending bankruptcy proceeding and requested they forward the withheld tax refund to

the Chapter 7 trustee for proper distribution in accordance with the terms of the Bankruptcy

Code. *Complaint* at 2. Based upon the return receipt, the Treasury received the letter on March

19, 2013; however, no one from the Treasury responded to the message, nor did anyone forward

the sequestrated funds to the trustee as requested. *Id.*

After the government failed to release the funds, on June 25, 2013, Ms. Sexton filed a

motion to reopen the bankruptcy case and challenged the government's application of her tax

refund to her prepetition debt owed to the DOA. Motion to Reopen Case, *In re Sexton*, 13-70230

(Bankr. W.D. Va. June 25, 2013) ECF Doc. No. 11. The Court granted the motion to reopen on

July 25, 2013. *Id.* After reopening the case, Ms. Sexton's attorney instituted this adversary

proceeding against the government for allegedly violating the automatic stay by confiscating and

continuing to withhold her anticipated 2012 refund, which she asserts she had exempted from her

estate. *Complaint* at 3–4. Further, the complaint requested that this Court order the government

to reimburse either the trustee or debtor the amount of the refund as well as pay attorney's fees

and actual damages incurred as a result of the actions. *Id.* at 4. As set forth more fully below, in

its response, the government denied any wrongdoing in intercepting the tax overpayment.

*Answer* at 5. It argued the tax refund did not become a part of Ms. Sexton's estate and procure

the stay's protections until after the Secretary of the Treasury complied with the mandatory

requirements of the Treasury Offset Program. *Id.* Furthermore, the government challenged the

---

from the Treasury on March 21, 2013. Exhibit A at 3, *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-07037
(Bankr. W.D. Va. Sept. 23, 2013) *attachment to* ECF Doc. No. 11.

complaint's procedural soundness under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(b)(1)—both applicable in the bankruptcy context pursuant to Federal Rule of Bankruptcy Procedure 7012(b).  *See id.* at 4–5.  Finally, the government sought entry of a *nunc pro tunc* order retroactively validating its setoff action against Ms. Sexton.  Motion for Nunc Pro Tunc Order Validating Setoff, *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-07037 (Bankr. W.D. Va. Sept. 24, 2013) ECF Doc. No. 13 [hereinafter *Nunc Pro Tunc Motion*].

The Court held a pretrial conference on November 5, 2013, at which it requested the parties brief the interaction between the Bankruptcy Code and the Treasury Offset Program. Each party submitted authorities in support of their respective positions.  The Court will outline these arguments below.

## ANALYSIS

Ms. Sexton's complaint included two claims.  First, she argued the government's interception of her refund and application of the TOP provisions violated the automatic stay. *Complaint* at 3.  Second, Ms. Sexton claimed the government's refusal to release the funds after learning of the bankruptcy proceeding also violated the terms of the automatic stay.  *Id.*  Both causes of action proceed under Bankruptcy Code section 362(k) and assume that Ms. Sexton's interest in the tax refund became property of her bankruptcy estate—and thus fall under the umbrella protections of the automatic stay—upon the filing of her bankruptcy petition.

In response to Ms. Sexton's complaint, the government defended its actions by asserting Ms. Sexton only possessed a contingent interest in the overpayment until after the Secretary of the Treasury complied with TOP.  The government moved to dismiss through two separate motions under Rule 12.  First, the government asserted that the complaint failed to state a claim upon which relief could be granted under Rule 12(b)(6).  *See* Motion to Dismiss Adversary

Proceeding, *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-07037 (Bankr. W.D. Va. Sept. 23, 2013) ECF Doc. No. 10.  Second, it moved to dismiss Ms. Sexton's action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  *See* Motion to Dismiss Adversary Proceeding Federal Rule of Civil Procedure 12(b)(1), *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-07037 (Bankr. W.D. Va. Sept. 24, 2013) ECF Doc. No. 16.  As these motions are threshold issues, the Court will begin its analysis by addressing them.[5]

### (a) *Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes any defendant to raise, by motion, a defense of "lack of subject-matter jurisdiction."  FED. R. CIV. P. 12(b)(1).  In this case, the government's two arguments for why there is a lack of subject matter jurisdiction challenge Ms. Sexton's standing to bring this suit.  "Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States."  *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001).

By lodging a Rule 12(b)(1) challenge, the defendant asserts that the complaint does not sufficiently plead a jurisdictional basis for the court to hear the matters before it.  These challenges can take two forms—"facial" or "factual."  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  In asserting a facial challenge, the movant argues, even assuming that everything in the complaint is true, there is no jurisdictional "hook" pled.  *Id.*  Conversely, when the challenge is factual, the movant asserts that, although there are facts pled sufficient to establish jurisdiction, those facts simply are not true.  *Id.*

---

[5]    The government's first responsive pleading was to the Rule 12(b)(6) motion; however, if the Court lacks subject matter jurisdiction under Rule 12(b)(1), we should not even address the Rule 12(b)(6) motion.  Accordingly, the Court will address the jurisdictional challenge first.

The government contends its challenge to the complaint's jurisdictional basis is factual, because Ms. Sexton actually suffered no injury. Having no injury deprives her of standing to bring her case. Memorandum in Support of Rule 12(b)(1) Motion to Dismiss at 3, *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-07037 (Bankr. W.D. Va. Sept. 24, 2013) ECF Doc. No. 17 [hereinafter *Rule 12(b)(1) Memo*]. Alternatively, an underlying theme of many of the government's arguments for why Ms. Sexton has suffered no injury is that Ms. Sexton is not the proper plaintiff in the action. *Id.* at 5.

      i.    *Lack of Injury*

The government's main argument is that Ms. Sexton cannot prove that she has an "injury-in-fact which is constitutionally required in order . . . to have Article III standing." *Id.* at 2. Further, it asserts that this motion to dismiss presents a "factual," as opposed to a "facial," challenge, because "the jurisdictional allegations of the complaint [are] not true." *Id.* at 3 (quoting *Kerns*, 585 F.3d at 192) (alteration in original). In its brief, however, the government does not identify any factual allegations that it contests; it simply makes the conclusory contention: "the Defendants make a factual challenge to subject matter jurisdiction." *Id.*

After a careful review of the pleadings, the only factual issue the government seems to dispute is the existence of an injury-in-fact. *Id.* at 6. In bankruptcy, "an injury-in-fact means a pecuniary loss." *Id.* In the Chapter 7 context, to have a pecuniary loss, the debtor must show either that she had properly exempted the property or that there was a likelihood that some remainder amount of property would revert back to the debtor after the administration of the estate. *Id.* According to the government, Ms. Sexton retained only a conditional interest in the refund of her tax overpayment, subject to the Secretary of the Treasury's compliance with the provisions of 26 U.S.C § 6402. *Id.* at 6. After the Secretary of the Treasury complies with the

provisions of 26 U.S.C. § 6402(d) and applies the tax overpayment to satisfy Ms. Sexton's

preexisting debt to the DOA, the government must return any remainder to the taxpayer as a tax

refund.  *See id.*  The government argues that, because the offset absorbed the entire amount of

the overpayment, no remainder ever existed for the Secretary to refund and become a part of the

debtor's bankruptcy estate.  *Id.*  As such, the debtor: (1) could not exempt the refund from the

estate and (2) did not lose any pecuniary interest, since there was no remainder to revert back to

her.  *Id.*  Thus, Ms. Sexton suffered no injury by the government's actions.

Despite the above arguments, the Court rejects the government's characterization of the

challenge as "factual."  Although framed as such, the government does not contest any of the

facts alleged, but summarily asserts that the plaintiff suffered no injury.[6]  Whether or not Ms.

Sexton has suffered an injury depends entirely upon the *legal* determination of the extent of her

interest in the overpayment.  As Justice Scalia opined in *Steel Co. v. Citizens for a Better

Environment*, "[j]urisdiction . . . is not defeated . . . by the *possibility* that the averments might

fail to state a cause of action on which petitioners could actually recover."  523 U.S. 83, 89

(1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)) (alterations in original) (internal

quotation marks omitted).  Instead, he continued:

> [T]he . . . court has jurisdiction if the right of the petitioners to recover under their
> complaint will be sustained if the Constitution and laws of the United States are
> given one construction and will be defeated if they are given another . . . unless
> the claim clearly appears to be immaterial and made solely for the purpose of
> obtaining jurisdiction  or where such a claim is wholly insubstantial and frivolous.

*Id.* (internal quotation marks omitted) (citation omitted).

---

[6]    Such an argument could be sufficient as a *legal* challenge to the sufficiency of the pleadings if the relevant
law is settled; however, here, neither the Fourth Circuit nor any other court within the Western District of Virginia
has adopted the government's construction of the law.  Ultimately, the government does not argue that there is no
standing or subject matter jurisdiction but, actually, that the actions did not violate any recognized legal right.  As
such, the proper strategy by which to lodge this attack is under Rule 12(b)(6), which the Court addresses below.

In this case, whether Ms. Sexton has an injury-in-fact depends entirely upon the construction of the relevant statutes and case law, which remain unsettled within the Fourth Circuit.  The government's argument assumes the debtor's interest in her overpayment did not become a part of her estate until after the Secretary of the Treasury complied with the offset procedures; however, that question is central to the merits of the debtor's cause of action and the government's defense and remains unresolved.  Thus, the Court concludes that it is improper to dismiss the action for want of jurisdiction at this stage of the proceeding.

    *ii.*    *Improper Party*

Alternatively, the government suggests that Ms. Sexton is not the proper party to bring the action, so she lacks standing.  *Rule 12(b)(1) Memo* at 5.  In its Memorandum in Support, the government cites multiple sources suggesting that in the Chapter 7 context only the trustee has standing to prosecute causes of action on behalf of the estate.  *See id.* at 5–6 (citing *In re Gronczewski*, 444 B.R. 526, 532 (Bankr. E.D. Pa. 2011) ("Significantly, in the chapter 7 context, the sole legal representative of the bankruptcy estate is the chapter 7 trustee."); *In re Cook*, No. 07-04-17704-SA, 2008 WL 5157847, at *3 (Bankr. D. N.M. Sept. 15, 2008) ("As a rule, a trustee, and only a trustee, has standing to prosecute causes of action on behalf of the bankruptcy estate.") (quoting *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 601 (Bankr. S.D. Tex. 2005)); *In re Chong*, No. 12-15332-BK, 2013 WL 1829662, at *6 (Bankr. E.D. Va. May 1, 2013) (providing a short list of cases holding that only the trustee has standing to bring an action for a violation of stay in the Chapter 7 context)).

The government's argument does not stop there, however, as it further asserts that even the trustee lacked standing to pursue this claim.  *Id.* at 6–7.  Here, as with its injury-in-fact argument, the government asserts that because the refund never became an asset of the estate, the

estate suffered no injury, depriving the trustee of standing as well. *Id.* at 7–9. Ultimately, the government's argument is that this case presents no cause of action, because its actions violated no right of either the debtor or the debtor's estate. Accordingly, the government's attack of the complaint seems to be under Rule 12(b)(6) rather than Rule 12(b)(1).[7] As such, the Court will address the improper party argument with the government's Rule 12(b)(6) motion.

### (b) *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant can move to dismiss a case when, assuming the facts as pled are true and construing all inferences in favor of the plaintiff, the complaint does not state a claim upon which the court can grant relief. FED. R. CIV. P. 12(b)(6); *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 539 (4th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Each of the parties' briefs delves into the merits of the claim as a whole; however, the Court must not consider the merits at this stage in the proceeding. *Tahir Erk v. Glenn L. Martin Co.*, 116 F.2d 865, 869 (4th Cir. 1941) ("[I]n weighing the validity of a motion to dismiss for insufficiency, the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. Our duty, rather, is to consider whether in the light most favorable to

---

[7]  For judicial economy and clarity, courts must ascertain a filing's true nature. *See, e.g., Hailey v. Yellow Freight System, Inc.*, 599 F. Supp. 1332 (W.D. Mo. 1984) (redefining a defendant's motion for "Judgment on the Pleadings" made prior to filing an answer as a motion under Rule 12(b)(6)). When a complaint does not state a cause of action, the proper motion is one under Rule 12(b)(6) rather than Rule 12(b)(1). Upon a closer inspection of the pleadings, the government's arguments in support of both of its motions to dismiss are identical—the refund never became a part of Ms. Sexton's bankruptcy estate, because it was only contingent until after compliance with the TOP procedures, so she (1) was not injured, (2) was not the proper party to the bring the claim, and (3) did not state a cause of action upon which relief could be granted. This argument, however, presupposes an unsettled legal contention and is better suited for a decision on the merits of the case rather than a procedural attack on the pleadings.

the plaintiff, and with every intendment regarded in his favor, the complaint is sufficient to

constitute a valid claim.").  Rule 12(b)(6) requires only that the court accept all *factual*

allegations as true; it does not mandate that a court accept as true the *legal* conclusions

presented.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Nevertheless, the

court "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not

be entitled to relief under any legal theory which might plausibly be suggested by the facts

alleged."  *Id.* (emphasis removed).

According to the government's motion, Ms. Sexton's complaint fails to state a claim

upon which relief can be granted, not because of insufficient pleadings and factual allegations,

but actually because her action, as a matter of law, does not exist.  *See* Memorandum of Law in

Support of Their Motion to Dismiss 3–6, *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 13-

07037 (Bankr. W.D. Va. Sept. 23, 2013) ECF Doc. No. 11 [hereinafter *Rule 12(b)(6) Memo*].  In

support of this position, the government cites a litany of cases holding that only the debtor's

contingent interest in her tax refund became a part of the estate.  *Id.* at 4–6.[8]  "Because the

debtor/plaintiff's overpayment of her 2012 taxes was subject to 100% setoff under § 6402(a), she

was never entitled to a refund, the refund was never part of her bankruptcy estate, and, therefore,

it could not be exempted by the debtor."  *Id.* at 6.

Conversely, Ms. Sexton argues that the Fourth Circuit has not yet settled the law in this

area.  Response to Rule 12(b)(6) Motion to Dismiss at 7, *Sexton v. Dep't of Treasury, IRS (In re

Sexton)*, 13-07037 (Bankr. W.D. Va. Jan. 21, 2014) ECF Doc. No. 27 [hereinafter *Rule 12(b)(6)

Response*].  According to the debtor, the government bases its position primarily upon the Fifth

---

[8]        These cases appear to hold that because the debtor has a contingent interest in a tax refund, the tax refund
does not become property of the bankruptcy estate; that is, the contingency effects an exclusion from property of the
estate.  No basis is provided for this conclusion; rather, the contingency alone is cited as the basis to exclude the
interest from property of the bankruptcy estate.

Circuit decision of *IRS v. Luongo*[9] and its progeny and cites only one case from within the Fourth

Circuit in support of this proposition—*In re Abbott*,[10] an unpublished opinion from the Eastern

District of North Carolina. *Id.* On the other hand, in support of her position, Ms. Sexton relies

on *In re Moore*,[11] a Western District of Virginia opinion in which the court declined to follow *In

re Luongo*. In *Moore*, the court determined that the government's use of the section 6402 setoff

provisions against a nontax liability was a violation of the automatic stay, implicitly holding that

a tax refund becomes part of a bankruptcy estate upon the filing of a bankruptcy petition. *Id.* at

655–56.

According to the information before it, the Court finds that Ms. Sexton has carried her

burden in pleading and denies the government's motion to dismiss. Important to the Court's

decision is the fact that neither the Supreme Court nor the Fourth Circuit has addressed what type

of property interest a debtor has in a tax overpayment when the intercept provisions apply.

Cognizant of the conflicting authority within the Circuit and the relatively low standard under

Rule 12(b)(6), the Court does not believe "to a certainty that the plaintiff would not be entitled to

relief under any legal theory which might plausibly be suggested by the facts alleged." *Edwards*,

178 F.3d at 244 (emphasis removed). Without reaching the merits of the claim or settling the

question of law raised in the case, the Court finds that Ms. Sexton's claim is at least "plausible

on its face" and, therefore, survives the government's motion to dismiss. *Iqbal*, 556 U.S. at 678.

### *(c) Adversary Proceeding to Enforce the Automatic Stay*

Having concluded the complaint withstands all of the government's motions to dismiss,

the Court now moves to the merits of Ms. Sexton's action. As mentioned above, Ms. Sexton

---

[9]     259 F.3d 323 (5th Cir. 2001).

[10]    No. 12-01166-8-SWH, 2012 WL 2576469 (Bankr. E.D. N.C. July 3, 2012).

[11]    350 B.R. 650 (Bankr. W.D. Va. 2006).

claims that the government violated the automatic stay by offsetting, post-petition, her

prepetition obligation to the DOA with her 2012 tax overpayment.  *See generally Complaint*.

Conversely, the government contends that Ms. Sexton only had a contingent right to receive a

tax refund, in the event that funds remained after the Secretary of the Treasury complied with the

TOP provisions.  *See generally Answer*.  The question posed by the parties' positions, therefore,

is what kind of interest a debtor has in a tax overpayment and to what extent is that interest a part

of a debtor's bankruptcy estate.  Courts are split on this question, and, in recent years, the divide

has grown.  As such, the Court finds it necessary to review the relevant statutory provisions of

the Bankruptcy Code and Internal Revenue Code along with the split of authority among the

courts.

     *i.*     Statutes

         *a.*  *Property of the Estate*

Pursuant to section 541 of the Bankruptcy Code, the filing of a petition for bankruptcy

automatically creates a bankruptcy estate, which is subject to administration by the trustee.  11

U.S.C. § 541(a).  The Code defines "estate" liberally to include all property interests of the

debtor at the time she files her petition, irrespective of whether the property interests are legal or

equitable, tangible or intangible, or vested or contingent.  *Id.*; *United States v. Whiting Pools,

Inc.* 462 U.S. 198, 205 (1983) (observing that a property of the bankruptcy estate includes

property in which a debtor does not have a possessory interest at the time of the petition due to

seizure by IRS pursuant to a tax lien);[12] *In re Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993) ("[T]he

term 'property' has been construed most generously and an interest is not outside its reach

---

[12]     The government argued in *Whiting Pools* that property seized pre-petition pursuant to a tax lien was not
property of the estate and, therefore, not subject to a turnover action.  The Supreme Court disagreed, noting
"[n]othing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for
the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien."  462 U.S. at 209.

because it is novel or contingent or because enjoyment must be postponed. . . .  In fact, every

conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,

is within the reach of § 541.”) (internal quotation marks omitted); *In re Quade*, 482 B.R. 217,

225 (Bankr. N.D. Ill. 2012) (“Unless expressly excepted, every conceivable interest of the debtor

. . . regardless of the extent of the interest, becomes property of the estate.”); *In re Cady*, 440 B.R

16, 20 n.10 (Bankr. N.D. N.Y. 2010) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d

116, 122 (2d Cir. 2008) (“It would be hard to imagine language that would be more

encompassing than this broad definition. . . .  Every conceivable interest of the debtor, future,

nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.”)).

       *b.  Automatic Stay*

Simultaneous with the creation of the bankruptcy estate, an automatic stay engages to

protect the property included therein.  11 U.S.C. § 362(a).  The stay is the most powerful

protection the Bankruptcy Code affords debtors.  *See Bunch v. NCNB South Carolina (In re*

*Bunch)*, 119 B.R. 77, 79 (Bankr. D. S.C. 1990) (quoting from legislative history addressing the

purposes of the automatic stay).  It protects debtors not only from the commencement or

continuation of legal actions against them, but also from any acts to obtain possession of, create

or enforce liens against, or collect assets included in the debtor’s estate.  *See* 11 U.S.C. § 362(a).

One such action expressly prohibited by the automatic stay is “the setoff of any debt owing to the

debtor that arose before the commencement of the case under this title against any claim against

the debtor.”  *Id.* at § 362(a)(7); *Quade*, 482 B.R. at 229 (“While the Bankruptcy Code preserves

the right of setoff . . . the express provisions of the automatic stay . . . make clear that no

postpetition setoff is permissible without relief from stay.”)

Although the automatic stay seems impregnable, subpart (b) of section 362 delineates an extensive—and exhaustive—list of actions that are not subject to the stay's protection. *See* 11 U.S.C. § 362(b); *Shaw v. Ehrlich*, 294 B.R. 260, 266 (W.D. Va. 2003).  Included in this list is an exception for setoff for income tax liability.  11 U.S.C. § 362(b)(26) ("The filing of a petition . . . does not operate as a stay . . . of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability . . . .").  Notable to the matters before the Court, Congress enacted section 362(b)(26) *after* the Fifth Circuit's decision in *Luongo*.[13]  Thus, although the Court faces a similar question as the Fifth Circuit did in *Luongo*, the statutory framework under which we proceed is different in this important regard.

### c.  Tax Offset Program

In this case, the "applicable nonbankruptcy law" authorizing setoff is the Treasury Offset Program, which authorizes the Secretary of the Treasury to intercept an individual's tax overpayment[14] and apply it to preexisting debts.  26 U.S.C. § 6402.  This statute has multiple

---

[13]     Congress added section 362(b)(26) as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pub L. No. 109-8, Stat. 23-217 (2005).  At this time, the relevant provisions of the Tax Code, specifically 26 U.S.C. § 6402(a)–(d), were already effective.

[14]     Many cases, in debating whether to follow *Luongo*, also recognize the distinction between a tax "overpayment" and a tax "refund."  *See Pigott*, 330 B.R. 797, 800 (Bankr. S.D. Ala. 2005) ("Case law has held that there is a distinction between an overpayment and a refund.  An 'overpayment' is defined as any payment made by the taxpayer over and above the tax liability. . . .  A refund is an obligation of the IRS to pay the taxpayer an overpayment.") (internal citations omitted) (internal quotation marks omitted).  In its answer, the government asserts that this definitional distinction is "critical" to the present matter; however, the Court disagrees.  *Answer* at 4.

Briefly, once all of the facts necessary to ascertain the amount of the overpayment exist—at midnight of December 31 of the relevant tax year—the taxpayer has a right to recover that amount.  The intercept statute authorizes the government to intervene and capture those funds; however, if the taxpayer files for bankruptcy prior to the Secretary acting, the debtor's interest in the property at that time vests in the bankruptcy estate.  If, thereafter, the government wants to use the overpayment for a setoff under section 6402, it must first get relief from the stay or act under an applicable exception enumerated in section 362(b).

Accordingly, the Court, although aware of the legal difference between an overpayment and a refund, does not find it determinative of the issue before us.  In this opinion, we will adhere to the aforementioned nomenclature, but, ultimately, the Court believes that what we call the debtor's interest in the property is unimportant.  Even if she

subsections, including subsection (a) that permits the Secretary of Treasury to offset a tax overpayment to satisfy tax liability and additional subsections under which the Secretary of the Treasury may offset to satisfy nontax debt.[15]  *See id.* at 6402(c), (d), (e) and (f).

Under the provisions of 26 U.S.C. § 6402(d)(1), when the Secretary receives notice that a taxpayer owes a "past-due legally enforceable debt" to another federal agency, "the Secretary *shall* . . . reduce the amount of any overpayment payable to such person by the amount of such debt . . . ."  *Id.* at § 6402(d)(1)(A) (emphasis added).  The provisions further instruct the Secretary to forward the withheld amount to the appropriate federal agency and notify the taxpayer of the offset.  *Id.* at § 6402(d)(1)(B) & (C).  After compliance with the provisions of the intercept statute, the Secretary must refund any remaining balance to the taxpayer.  *Id.* at 6402(a).

The relevant provisions of both the Bankruptcy Code and the Internal Revenue Code's Treasury Offset Program are unambiguous—the automatic stay protects the property included in the bankruptcy estate except for the enumerated exceptions, and the Secretary of the Treasury must comply with the offset procedures when notified of the existence of a debt to another agency.  What is not clear is whether the mandatory offset procedures of the Tax Code either usurp the Bankruptcy Code provisions or change the character of the property interest to affect an exclusion from the Bankruptcy Code's protections.

*ii.   Case Law*

---

only had an interest in her "overpayment," that interest would vest in her estate at the time of filing her petition, and the government would have to seek relief from the automatic stay to proceed against it.

[15]      Under the language of Bankruptcy Code section 362(b)(26), the automatic stay does not apply to stay an intercept and offset under section 6402(a) to the extent the offset is applied to satisfy pre-petition tax liability; however, section 362(b)(26) does not affect the stay's protection against the offset under other provisions of the intercept statute.

Historically, a majority of courts considered TOP to be subordinate to the Bankruptcy Code. *See Pigott*, 330 B.R. at 799 ("The issue presented is whether the IRS is entitled to offset the unpaid dischargeable tax debt of the debtors against any tax overpayment prior to remitting a refund to the debtors. . . .   What was called the majority view, at least until 2001, is set forth in . . . *In re Jones* . . . .   The opposing view is set forth in *IRS v. Luongo* . . . .").[16]   Under this line of cases, when a taxpayer filed for bankruptcy and had a right to receive a tax refund, the amount of the refund vested in the bankruptcy estate subject to the automatic stay's protections. *Id.* (listing cases from courts across the country in which the court ruled that a taxpayer's bankruptcy estate included the taxpayer's tax refund).  In 2001, however, the Fifth Circuit's decision in *Luongo* upended this precedent.

In *Luongo*, the debtor filed for Chapter 7 relief under the Bankruptcy Code on May 19, 1998. *Luongo*, 259 F.3d at 332.  The debtor's schedules disclosed a debt of $3,800 owed to the IRS for unpaid taxes from the 1993 tax year. *Id.*  On August 15, 1998, the debtor filed her 1997 tax return, showing that she had overpaid and was due a refund in the amount of $1,395.94. *Id.* A month later, the bankruptcy court entered an order discharging the debtor's personal liability on her debts, including the unpaid 1993 tax liability. *Id.* at 332–33.  Shortly after her discharge, in November, the IRS instituted setoff proceedings to apply the debtor's 1997 tax refund to her discharged 1993 tax liability. *Id.* at 333.  The debtor petitioned the bankruptcy court to reopen her case, which it did, and she promptly amended her schedules to exempt her tax refund. *Id.* at 335.

---

[16]     Prior to the *Luongo* decision, courts were split over whether an exemption under "§ 522(c) trump[ed] setoff rights preserved by § 553," and they rarely discussed whether the tax refund became property of the estate. *See Miller v. United States (In re Miller)*, 422 B.R. 168, 172 (W.D. Wis. 2010) ("As the bankruptcy court and the parties recognize, more courts have held that exempt property is not subject to setoff, than have reached the opposite conclusion.").  Thus, at that time, the courts took for granted the fact that a debtor's interest in her tax overpayment was a part of her bankruptcy estate.  If the overpayment did not become property of the estate, the debtor would not have had the ability to exempt it, rendering the question of setting off exempt property moot.

After granting the debtor's motion to reopen the case with leave to amend her

schedules,[17] the Bankruptcy Court analyzed the juxtaposition of Bankruptcy Code section

522(c)—"property exempted under this section is not liable . . . for any debt of the debtor that

arose . . . before the commencement of the case"—and section 553(a)—"this title [the

Bankruptcy Code] does not affect any right of a creditor to offset . . . ." *Id.* at 327 (citing 11

U.S.C. §§ 522(c) & 553(a)) (alteration in original).  Acknowledging that one of these sections

had to yield to the other, the Bankruptcy Court determined that section 522(c) took precedence

over section 553(a), and the IRS could not set off the exempted property.  *Id.*  On appeal, the

District Court reversed the decision, because "based on the clear and unambiguous language of

[section] 553(a) the IRS' right of setoff was unaffected by [the debtor's] claims that the tax

overpayment is exempt property and the tax liability was discharged in the bankruptcy

proceeding."  *Id.*

On review, the Fifth Circuit analyzed its framework for establishing a right of setoff and

whether the IRS adhered thereto.[18]  Although the court ultimately found that the IRS possessed a

valid right of setoff, the question still remained whether it could exercise that right against

property the debtor had properly exempted from her estate.  *Id.* at 335.  In addressing this

question, prior to section 362(b)(26)'s enactment, the court discussed when the debtor's interest

in her refund vested in the estate, and, as a corollary, whether the debtor could properly exempt

the refund from the estate.  *Id.* at 335.  Notably, the *Luongo* court found that the tax refund was,

in fact, a part of the bankruptcy estate; however, it held that "under 26 U.S.C. § 6402(a) the

---

[17]    As in this case, the IRS argued in *Luongo* that the Bankruptcy Court lacked jurisdiction over the case;
however, the Fifth Circuit held that the court had jurisdiction and had not abused its discretion by hearing and
deciding the case.  *See id.* at 328–32.

[18]    In analyzing if the IRS established a valid right of setoff, the court said it must provide: "(1) a debt owed by
the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor
against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and claim must
be mutual obligations." *Id.* (citing *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir. 1987)).

debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability." *Id.* Accordingly, because the IRS properly offset the overpayment, and the refund was merely contingent upon the application of the TOP procedures, the debtor had no interest in the property remaining in her estate to exempt. *Id.*

The Fifth Circuit's decision in *Luongo*, evoked a split in the case law. A number of courts across the country followed *Luongo* and held that the refund did not vest in the estate until after the Secretary of the Treasury complied with the provisions of section 6402(a), leaving only the remainder as a part of the estate. *See Pigott*, 330 B.R. at 799–800; *In re Baucom*, 339 B.R. 504, 506–07 (Bankr. W.D. Mo. 2006); *Gordon v. United States (In re Sissine)*, 432 B.R. 870, 883 (Bankr. N.D. Ga. 2010). Thus, if no portion of the overpayment remained after setoff, the debtor retained no interest in the refund to exempt. *See Baucom*, 339 B.R. at 507; *Lyle v. Santa Clara County Dep't of Child Support Services (In re Lyle)*, 324 B.R. 128, 131 (Bankr. N.D. Cal. 2005); *Beaucage v. IRS*, 342 B.R. 408, 411 (C.D. Mass. 2006); *Jones v. IRS (In re Jones)*, 359 B.R. 837, 841 (Bankr. M.D. Ga. 2006). Many of these courts, however, acknowledge that it remains a minority position. *See, e.g., Pigott*, 330 B.R. at 799 ("The opposing view [to the majority view] is set forth in [a list of cases, including *Luongo*.]); *Miller*, 422 B.R. at 172 (acknowledging that the cases following *Luongo* were a "minority" position).

Conversely, other courts declined to adopt *Luongo*'s reasoning. *See In re Vargas*, 342 B.R. 762 (Bankr. N.D. Ohio 2006); *see also In re Lybrand*, 338 B.R. 402 (Bankr. W.D. Ark. 2006) (granting the IRS relief from the automatic stay prior to setting off the debtor's tax refund); *In re Pleasant*, 320 B.R. 889 (Bankr. N.D. Ill. 2004) (granting relief from the automatic stay so the government's setoff of a tax refund was proper); *In re Stienes*, 285 B.R. 360, 362 (Bankr. D. N.J. 2002) (holding that although the IRS ultimately could get relief from the

automatic stay, "[i]n order to exercise a valid right of setoff, a creditor must move for relief from

the automatic stay . . . ."); *Newberry v. USDA (In re Newberry)*, 12-40455, 2013 WL 618746

(Bankr. S.D. Ill. Feb. 19, 2013) (ruling that the government violated the automatic stay by

applying the TOP procedures against the debtor's tax refund); *In re Mirabilis Ventures, Inc.*, No.

08-BK-04327, 2011 WL 1167880 (Bankr. M.D. Fla. Mar. 28, 2011) (reasoning that although the

IRS had a right to offset the tax refund, it first had to petition for relief from the automatic stay);

*IRS v. Martinez*, No. 07-CV-0687, 2008 WL 408402, at *1 n.2 (M.D. Penn. Feb. 12, 2008)

("Creditors' setoff rights [here, the IRS under TOP,] are automatically stayed when a Chapter 13

bankruptcy petition is filed; thus, a creditor must seek relief from the automatic stay in order to

apply a setoff.").[19]

Although settled in some other Circuits, within the Fourth Circuit, in particular, this

question of law is unsettled.  Since *Luongo*, only two courts in the Fourth Circuit have even

considered the interaction between the government's right to offset a tax overpayment and the

protections of the automatic stay—the aforementioned *In re Abbott*, adopting *Luongo*'s

reasoning, and *In re Moore*, declining to do so.

In *Abbott*, the court adopted the *Luongo* interpretation of the statutes without much

discussion or analysis of the statutes or case law.  The court, however, focused on the fact that

the provisions of section 6402(d) are mandatory.  *See In re Abbott*, 2012 WL 2576469, at *3.  In

concluding, the court acknowledged:

> The Secretary was required to reduce the overpayment to zero because the debtor
> owed [the government] in excess of his tax refund.  Nothing remained to become
> property of the estate after the Secretary's mandatory reduction of the debtor's tax

---

[19]     Not all of these cases expressly reject *Luongo*; however, by holding that either the government first had to
get relief from the automatic stay or else would be in violation of the automatic stay, these courts implicitly reject
the *Luongo* court's reasoning that the TOP provisions apply prior to the property entering the bankruptcy estate.  In
order for the automatic stay to apply, the property interest had to vest in the estate first.

refund.  Since the debtor's tax refund never became property of the estate, the U.S. Treasury is under no obligation to turn over the funds.

*Id.* (internal citations omitted). Notably, in *Abbott*, the setoff occurred *pre-petition*, and the debtor was attempting to retroactively invalidate the pre-petition set off.  *Id.* at *1.

Conversely, the court in *Moore* held that the government's seizure of the tax refund violated the stay.  First, it acknowledged that the government "executed the administrative setoff . . . one day following the filing of the debtor's petition."  350 B.R. at 655.  Despite the close proximity in timing, however, the court held that to rule the government's actions of setoff did not violate the automatic stay would "thwart the intent of both Congress and the Commonwealth of Virginia in providing the statutory mechanisms for equality of creditor treatment (§ 362) and the debtor's fresh start."  *Id.* at 656.  The court then considered a post-action annulment of the stay and, after weighing the equities of the case, held that "the debtor was entitled to exempt from the claims of creditors assets constituting property of the estate as of the date of filing," including her interest in the tax refund.  *Id.* at 655–56.  Furthermore, the court reaffirmed the settled rule in the Fourth Circuit that "[p]repetiton creditors may not execute a post-petition set off on property scheduled as exempt by the debtor."  *Id.* at 656.  Ultimately, the court ordered turnover of the refund; however, it found the government had not acted "willfully" in violating the automatic stay and declined to impose sanctions.  *Id.*

iii.    *Ruling*

Cognizant of the recent trend of courts following *Luongo*, we decline to adopt the Fifth Circuit's reasoning.  Instead, the Court finds that the government's post-petition withholding of the tax overpayment and post-petition offset of Ms. Sexton's debt to the DOA against her overpayment violated the automatic stay.  In this case, the Court finds that Ms. Sexton's right to recover her tax overpayment arose for the 2012 tax year at the midnight on December 31, 2012.

21

By filing her bankruptcy petition on February 13, 2013, which was prior to the Secretary of the

Treasury redirecting her overpayment to the Department of Agriculture, all of Ms. Sexton's

eligible property, including her interest in the overpayment, vested in her bankruptcy estate and

instantly acquired the protections of the automatic stay.  *See Complaint* at 2; 11 U.S.C. §§ 541 &

362.  Accordingly, the government's application of Ms. Sexton's overpaid funds to the

prepetition debt she owed to the DOA without first obtaining relief from the automatic stay was a

direct violation section 362(a).  Furthermore, contrary to the government's assertions in its

answer, it is settled law within the Fourth Circuit that a properly-claimed exemption trumps a

creditor's right to offset mutual prepetition debts and liabilities.  *See Moore*, 350 B.R. at 656; *see*

*also In re Ward*, 210 B.R. 531, 536 (Bankr. E.D. Va. 1997) (citing a litany of cases from

Virginia following the general rule "that a creditor may not exercise a right of setoff against

exempt property").  Accordingly, absent relief from the stay and a challenge to the claimed

exemption, Ms. Sexton's tax overpayment is beyond the reach of the government.

> a.   *Statutory Framework:  Sections 541(a) and 362(b)(26).*

In section 541, Congress expressly delineated what property interests become part of a

debtor's bankruptcy estate.  *See* 11 U.S.C. § 541.  Section 541(a) defines property of the estate

liberally to include all of the debtor's property interests, no matter who controls or possesses the

property or where it is located.  *See id.* at § 541(a).

Congress then expressly excluded specific property interests from the bankruptcy estate.

11 U.S.C. § 541(b).  Nowhere in section 541(b), however, does Congress exclude a debtor's

interest in her tax overpayment or right to a refund.

By not excluding such property from within the broad definition of "property of the

estate," these interests vest in the bankruptcy estate upon the filing of a petition.  As such, they

are subject to the protections of the automatic stay, including subsection (a)(7) that specifically

stays setoff actions.  11 U.S.C. § 362(a)(7).  To constrain the reach of the automatic stay,

Congress enacted section 362(b).  Subpart 26 of that section specifically excepts from violating

the automatic stay, "the setoff under applicable nonbankruptcy law of an income tax refund, by a

governmental unit, with respect to a taxable period that ended before the date of the order for

relief against an *income tax liability* . . . ."  11 U.S.C. § 362(b)(26) (emphasis added).  Based on

this statutory framework, the Court today finds that applying the *Luongo* court's ruling is

problematic.

The *Luongo* court did not have Bankruptcy Code section 362(b)(26) to consider when it

issued its ruling.  To now apply its holding that any governmental right to set off under TOP is

outside the protections of the Bankruptcy Code because the property did not become a part of the

bankruptcy estate renders section 362(b)(26) wholly superfluous.  If the debtor's interest in a tax

overpayment did not become property of that debtor's bankruptcy estate until after the

government applied its offset under section 6402(a) of the Tax Code, Congress had no reason to

enact section 362(b)(26) to except from the protections of the automatic stay such an offset.

Congress's enactment of section 362(b)(26) presupposes that such property interests

become part of the estate subject to the stay, except for this express carve out.  If the Court were

to hold that the property interest in question is not subject to the stay, it would render section

362(b)(26) unnecessary surplusage. We decline to adopt an understanding of these provisions

that renders an enacted part of the Bankruptcy Code a nullity.  *See Connecticut Nat'l Bank v.

Germain*, 503 U.S. 249, 253 (1992) (acknowledging that "courts should disfavor interpretations

of statutes that render language superfluous . . . ."); *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 642

(7th Cir. 1993) ("[A] fundamental rule of statutory construction requires that statutes are to be

construed, if possible, in harmony with the Constitution and other applicable statutes."). Thus, this Court concludes that a debtor's interest in her tax overpayment is a part of her bankruptcy estate.

Furthermore, section 362(b)(26) only excepts the offset of a tax overpayment to satisfy pre-petition *tax* liability. If the Court were to rule that section 362(b)(26) excepts the offset to satisfy *non-tax* liability, the Court would have to append extra terms onto the specific language of the enacted provision. As passed by Congress, the exception in section 362(b)(26) excludes from the protections of the stay only the setoff of an "income tax liability"—not the liability on other nontax debts. 11 U.S.C. § 362(a)(7) & (b)(26). Under the statutory canon of construction *expressio unius est exclusio alterius*, Congress's specific inclusion of the phrase "income tax liability" excludes the application of the provision to non-tax liabilities. *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 719 (1991) ("When a provision sets forth a general rule followed by specific exceptions to that rule, one must assume—absent other evidence—that no further exceptions are intended.").

Also instructive to the Court's decision today is the fact that Congress enacted section 362(b)(26) following the Fifth Circuit's ruling in *Luongo* and decades after enacting section 6402 of the Tax Code, yet it constrained the exception only to setoffs of *income tax liability*. Congress easily could have excepted all governmental debts by omitting the modifier "income tax" before the word "liability." It did not do so, and the Court declines to ignore the express language of the statute. Therefore, the Court concludes the language of 362(b)(26) does not except other, non-tax, governmental debts from the protections of the automatic stay.

Accordingly, the Court finds that a debtor's interest in her tax overpayment becomes fixed at the close of the relevant tax year for the purposes of bankruptcy law. At that point, the

amount of overpayment is discernible, and the debtor is entitled to recover that amount from the government.  Generally, outside of bankruptcy, the tax intercept provisions of section 6402 authorize the government to intervene and defer the taxpayer's right to the overpayment until after the Secretary of the Treasury complies with the offset provisions.  If the taxpayer files for bankruptcy prior to the offset occurring, however, the taxpayer's interest in the overpayment vests in her estate, and the automatic stay bars the government from pursuing the funds under the intercept statute without a court first lifting the automatic stay.  Absent some express exception in either section 541(b) or section 362(b), the Court cannot hold that such an interest did not vest in the bankruptcy estate and acquire the protections of the automatic stay.

### b.  Tax Refund versus Tax Overpayment

As discussed above, courts have noted a distinction between a tax overpayment and a tax refund.[20]  Because of this distinction's importance to many of the decisions following *Luongo*, the Court believes it is prudent to address it and explain why we do not believe it affects our analysis today.

A tax overpayment is the amount a taxpayer pays to the government in excess of her tax liability, whereas a tax refund represents the actual amount the government returns to the taxpayer when the taxes collected exceed her liability.  *Pigott*, 330 B.R. at 800.  An overpayment, however, is also subject to the Treasury Offset Program authorizing the Secretary of the Treasury to apply all or part of the tax overpayment to other debts the taxpayer owes to the government.  *See* 26 U.S.C. § 6402(a)–(d).  Thus, a tax refund is the net remaining, after satisfaction of taxpayer's current year's tax liability and other government indebtedness certified to the IRS under TOP, which the government must then return to the debtor.  *Id.* at § 6402(a).

---

[20]    *See supra* note 14.

Because of this process, and in particular the language in 26 U.S.C. § 6402(a) that the refund is "subject to" the Secretary's authority under TOP, courts that have followed *Luongo* characterize a right to a refund as "limited" and the property interest as "contingent." *See, e.g., Luongo*, 259 F.3d at 335 ("[T]he debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability."); *Pigott*, 330 B.R. at 802 ("[T]he debtor's interest in a refund is contingent on the subsequent statutory determination of what portion of the overpayment, if any, the debtor is entitled to receive as a refund."). From this point, some courts conclude that the Secretary's statutory claim to apply TOP eliminates a debtor's property interest in the tax refund, thus removing it from "property of the estate."

Although the Court generally agrees with the aforementioned analysis outside of the context of a bankruptcy proceeding, after a taxpayer files a petition for relief, the government's right to collection must comply with the requirements of the Bankruptcy Code. Under bankruptcy law, any property interest not expressly excluded becomes property of the bankruptcy estate—including a debtor's tax overpayment. As with any other right to collect outside of bankruptcy, once the debtor files her petition, the creditor's right to collect becomes subject to the automatic stay. Thus, by treating the government's right to set off under section 6402 the same whether the taxpayer is in bankruptcy or not, courts are essentially finding that TOP either (1) creates a statutory lien on the amount of the overpayment or (2) creates a statutory exclusion to the property interest's inclusion in the bankruptcy estate or (3) a statutory exception from the protections of the automatic stay. This Court disagrees.

By concluding that a federal collection statute eliminates a property interest, these courts fail to recognize: (1) the interest of the debtor in that overpayment enables the government to credit it on behalf of the debtor; (2) the right of the debtor to challenge the liability against which

the government applies the overpayment; (3) the right of the debtor to challenge the amount or

proper application of the offset; (4) the right of other creditors to the overpayment; and (5) the

right of the debtor herself to the overpayment.   The debtor's interest in the overpayment and the

debtor's right to a refund are both property interests.   Hence, under the broad definition Congress

used in section 541(a), these property interests vest in the debtor's bankruptcy estate just as any

other interest does.   If, thereafter, the government wants to use the overpayment for a setoff

under section 6402, it must first get relief from the stay or act under an applicable exception

enumerated in section 362(b).

The Court, further, believes that this ruling does not entirely remove the teeth from

section 6402.   The government can still exercise its right of setoff under section 6402 when the

taxpayer is in bankruptcy in certain situations that do not violate the automatic stay.   If, for

instance, the prepetition debt owed to the government was for an unpaid tax liability, the

government may set off the amounts without petitioning for relief from the stay, under section

362(b)(26)'s exception.   Similarly, if the government sets off the amounts prior to the taxpayer

filing for bankruptcy, the action would not violate the stay, because section 362 would not yet

apply.[21]   Finally, the government could petition the court for relief from the automatic stay and,

if granted, commence its setoff procedures.   Under the circumstances before the Court today,

however, when the government sets off a properly-exempted interest against a nontax debt *after*

the debtor filed for bankruptcy, the actions violate the stay.[22]

### *(d) The Government's* Nunc Pro Tunc *Motion*

---

[21]     The Court agrees that if the setoff occurred *prior to the filing of the petition*, the overpayment would not become property of the estate; however, the Court declines to conclude that a post-petition setoff erases the property interest from the estate.

[22]     The Court believes that this understanding of the relevant Tax Code provisions is consistent with the statutory framework Congress implemented in the Bankruptcy Code.   Our reading affords the relevant provisions of both Codes their full effect without rendering any other provisions redundant or unnecessary.   *See Kohler*, 12 F.3d at 642.

Finally, having determined that the government's setoff of Ms. Sexton's overpayment violated the automatic stay, the Court will now consider the government's *nunc pro tunc* motion. In the event the Court ruled in favor of Ms. Sexton on the merits of her action, the government also sought entry of a *nunc pro tunc* order retroactively annulling the stay and validating its setoff action against Ms. Sexton.   *See Nunc Pro Tunc Motion* at 1–2.  In support of its motion, the government relies on our decision in the *Moore* case as an explanation of the relevant law, and how the court should "balance the equities" of the case in making its decision.  *Id.* at 6.  The government asserts, however, that the decision is "not controlling," because the court "did not decide nor even discuss the [government's] present argument that the tax refund was never property of the bankruptcy estate, never property of the debtor, and that the estate or debtor had only a contingency interest in the tax refund . . . ."  *Id.*  Nevertheless, the Court finds that retroactive annulment of the automatic stay is improper in this case.

The decision of whether to lift the automatic stay is within the discretion of the bankruptcy judge.  *Ehrlich*, 294 B.R. at 272 (citing *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)).  Examples of when it is proper for courts retroactively to annul the automatic stay include when there is merely a technical violation of the automatic stay or when the creditor lacks knowledge of the automatic stay.  *See generally Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 187 (E.D. Va. 2005) (affirming the bankruptcy court's decision to retroactively lift the automatic stay when the creditor's violation of the automatic stay was merely "technical and unintended"); *Moore*, 350 B.R. at 655 ("An oft-cited example of when it is appropriate to grant an annulment is the situation where a creditor violates the stay but does so in good faith and without knowledge thereof.").  Not all innocent violations of the automatic stay, however, require the court to annul the stay.  *See generally Moore*, 350 B.R. at 655–56

(declining to annul the automatic stay, even though the government had no knowledge of the bankruptcy when it intercepted the funds). Moreover, in balancing the equities of a case, "the significance of the automatic stay weighs heavily *against* the party seeking an annulment." *Id.* at 655 (emphasis added).

In considering Ms. Sexton's case, the Court finds the decision in *Moore* instructive.[23] In *Moore*, as in Ms. Sexton's case, the government intercepted the debtor's tax overpayment and applied it to an existing debt owed to a non-IRS governmental department. *Id.* at 652–53. In that case, the court held that the equities did not favor retroactively lifting the stay, even though the government had no knowledge of the pending bankruptcy; the debtor had not yet exempted her interest in the refund; and the debtor had notice of the setoff procedures prior to her filing for bankruptcy relief and failed to respond timely. *Id.* at 655–56. Ultimately, the *Moore* court concluded that "[a]nnulment of the automatic stay in this case would thwart the intent of both Congress and the Commonwealth of Virginia in providing the statutory mechanisms for equality of creditor treatment (§ 362) and the debtor's fresh start." *Id.* at 656.

We agree with the reasoning in *Moore*, and, in fact, we find the equities of Ms. Sexton's case are more favorable than those in the *Moore* case. In the current case, the government knew of Ms. Sexton's bankruptcy but intercepted and withheld the overpayment anyway. Moreover, in *Moore*, the debtor had to reopen her case to exempt her refund, which occurred after the government's setoff procedures. *Id.* Ms. Sexton, on the other hand, exempted her interest in her refund before the government intercepted the funds.[24] Thus, the Court finds that the equities of

---

[23]    Although the government contends that *Moore* does not control the matters before the court today, the analysis in *Moore* regarding annulment of the automatic stay is valid.

[24]    Ms Sexton timely claimed an exemption and no one objected to the exemption. The government argues at this juncture that the debtor cannot exempt the interest, because she had no interest to exempt, but otherwise raises no objection to the claim of exemption. As mentioned above, this Court finds that the debtor does have a property interest in her right to a refund of her overpayment to the extent it exceeded tax liability. In this case, the debtor

the situation favor not retroactively annulling the automatic stay. Accordingly, the government's motion for entry of a *nunc pro tunc* order is denied.

### *(e) Relief*

Having ruled in favor of the debtor, the Court now must consider the appropriate remedy. In her complaint, Ms. Sexton sought (1) release of the $4,201 tax refund the government withheld, (2) reimbursement of actual damages and costs expended in response to the violation, (3) reimbursement of attorney's fees, (4) sanctions for the "willful violation" of the automatic stay, and (5) any other relief the Court deems just and equitable. *Complaint* at 4. The Court orders the government to release the sequestered funds and reimburse the debtor for her actual damages. We decline, however, to impose sanctions or any other relief requested.

Section 362(k)(1) grants any individual injured by a "willful violation" of the automatic stay the right to recover actual damages, including costs and attorneys' fees, as well as punitive damages in "appropriate circumstances." 11 U.S.C. § 362(k)(1). Within the Fourth Circuit, "to constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Maryland v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994). For punitive damages, the determination of "appropriate circumstances" is squarely within the court's discretion; however, some factors for the Court to consider include the creditor's "respect" for the automatic stay, the extent of the creditor's experience before bankruptcy courts, and the egregiousness or vindictive nature of the creditor's actions. *See In re Neal*, 106 B.R. 90, 93 (Bankr. E.D. N.C. 1989) (authorizing punitive damages when the creditor "had little respect for the stay"); *Bunch*, 119 B.R. at 80 (holding that

---

timely claimed and perfected her exemption in the full amount of the overpayment. The government did not timely raise any objection to the claim of exemption, so it appears that the exemption was effective. *See generally Taylor v. Freeland & Kronz,* 503 U.S. 638 (1992) (finding the failure to timely object to the validity of an exemption fatal to the objection).

punitive damages were not warranted due to the "isolated" nature of the creditor's actions violating the stay); *Davis v. IRS*, 136 B.R. 414, 424 (E.D. Va. 1992) ("[O]nly egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay . . . .").

In this case, the Court finds that the government's actions were willful; however, the conduct is not sufficient to warrant the imposition of punitive damages. The government intentionally intercepted the debtor's tax overpayment a month after she petitioned for bankruptcy relief and continued to withhold the refund, even after Ms. Sexton's attorney notified the government of the bankruptcy proceeding. The government intended its actions with knowledge of the automatic stay and, accordingly, must reimburse Ms. Sexton for her actual damages, attorney's fees, and costs. Nevertheless, although willful, the government's conduct was not "egregious" or "vindictive." The government's reading of section 6402 in this case, although ultimately rejected by the Court, was legitimate and not motivated by any nefarious or retaliatory purpose. Simply arguing for another understanding of a law, without more and when not done to harass the debtor or waste the Court's time, does not warrant the imposition of punitive damages. The Court is satisfied that the government respects the automatic stay and protections of the Bankruptcy Code, and these actions were isolated incidents based on the advocacy for an alternative construction of the law.

## CONCLUSION

In conclusion, the Court **DENIES** the government's respective motions to dismiss under Rules 12(b)(1) and 12(b)(6), as well as its motion for entry of an *nunc pro tunc* order retroactively annulling the automatic stay, and **GRANTS** the relief requested by the debtor in her action to enforce the automatic stay. In so ruling, the Court finds that the debtor had a vested

property interest in her tax overpayment to the extent it exceeded her tax liability on December 31, 2012.  When she filed her bankruptcy petition, that interest, along with all of her other eligible property, vested in her bankruptcy estate.  Thereafter, Ms. Sexton properly exempted that interest from her estate.  The automatic stay protected all of the debtor's property in the estate, as well as the property exempted therefrom.  These facts as well as the equities of the situation favor denial of retroactive annulment of the stay.  Thus, the government's actions in unilaterally sequestering the debtor's tax overpayment and applying it to her prepetition debts owed to the Department of Agriculture violated the automatic stay.

The government is, therefore, ordered to release the debtor's withheld overpayment.

Additionally, the debtor may submit any further evidence for other costs and fees incurred due to the government's actions, and the Court will consider those fees at a future hearing, if she so requests. The Court declines, however, to impose any punitive damages or other sanctions on the government for these actions.

The Court will contemporaneously issue a separate order consistent with this opinion.

Dated:  April 1, 2014

Rebecca B. Connelly
U.S. Bankruptcy Judge